Fourth Court of Appeals
San Antonio, Texas


## MEMORANDUM OPINION

No. 04-24-00337-CV

**IN THE INTEREST OF J.D.R.**, a Child

From the 438th Judicial District Court, Bexar County, Texas
Trial Court No. 2023-PA-00893
Honorable Lisa Jarrett, Judge Presiding

Opinion by:     Lori Massey Brissette, Justice

Sitting:        Rebeca Martinez, Chief Justice
                Beth Watkins, Justice
                Lori Massey Brissette, Justice

Delivered and Filed: September 25, 2024

AFFIRMED

This case involves the termination of Father J.R.'s right to parent J.D.R. (born 2023).[1] J.R.

appeals the trial court's order terminating his parental rights, arguing that the evidence is legally

and factually insufficient to support the trial court's findings under Texas Family Code section

161.001(b)(1) and its finding that termination is in J.D.R.'s best interest. We affirm the trial court's

order.

### BACKGROUND

When J.D.R. was born, he tested positive for methamphetamines. Both parents also tested

positive for methamphetamines at the hospital. Both parents admitted to having an ongoing issue

with methamphetamines, and J.R. also admitted regular use of marijuana. The Department tried to

---

[1] We use aliases to protect the child's identity. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8.

locate a family member or a family friend who could sign a safety plan for J.D.R. to avoid removing him to foster care, but the persons recommended by the mother all had a prior criminal history and/or a negative history with Child Protective Services or were unwilling to help.

J.D.R. was removed, the Department was named temporary managing conservator, and both parents were named temporary possessory conservators. A family service plan was established requiring both parents to complete parenting education, complete a psychological and drug assessment and follow all recommendations, and complete random drug testing. The family service plan was adopted as an order of the court and ultimately admitted as an exhibit at trial. The plan also required that the parents work to create a stable living situation for the child and maintain stable employment. Finally, while the mother's plan required her to complete a domestic violence course for victims, it is not alleged that J.R. was a perpetrator of domestic violence. Both parents reviewed the plan and were advised that if they were not willing or able to provide the child a safe environment within a reasonable period of time, their parental rights were subject to restriction or termination.

Rather than find a foster placement, the Department was able to place J.D.R. with the mother's grandmother, who also takes care of the mother's two other children (J.D.R.'s siblings). Mother did not demonstrate a desire to comply with the family service plan or to provide a safe environment with the child, did not appear at the final trial, and does not appeal the termination of her parental rights. While J.R. clearly had a desire to be in the child's life, demonstrated by his visits and random provision of diapers and toys, he failed to follow through on the requirements of the service plan, failed to maintain steady employment and failed to create a stable home for the child. He also did not appear for the final trial on the merits.

Ultimately, based on testimony from the Department's investigator and caseworker as well as from the mother's grandmother, the trial court terminated the rights of both parents pursuant to

Texas Family Code section 161.001(b)(1)(O) and (P) and found that termination of J.R.'s parental rights was in J.D.R.'s best interest. J.R. now appeals the trial court's termination order.

**FACTUAL AND LEGAL SUFFICIENCY REVIEW**

J.R. challenges not only the legal and factual sufficiency of the evidence supporting the trial court's findings under section 161.001(b)(1)(O) and (P), but also the legal and factual sufficiency of the evidence on which the trial court relied to conclude that termination was in J.R.D.'s best interest.

*Applicable Law and Standard of Review*

It is of constitutional importance when a trial court involuntarily terminates a natural parent's rights. *In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied). "As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* We must find that the Department proved, by clear and convincing evidence, that a statutory ground existed to terminate the parental rights and that termination is in the best interest of the children. TEX. FAM. CODE ANN. § 161.206; *In re. A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

When reviewing the sufficiency of the evidence supporting a trial court's order of termination, we apply well-established standards of review. *See In re J.F.C.*, 96 S.W.3d 256, 263–64 (Tex. 2002). When performing a legal sufficiency review, where the standard is clear and convincing evidence, we must look at the evidence in the light most favorable to the factfinder's finding to determine whether a reasonable factfinder "could have formed a firm belief or conviction that its findings are true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009); TEX. FAM. CODE ANN. § 101.007. For factual sufficiency, we look to the evidence contrary to the finding to

determine if it would prevent a reasonable factfinder from forming the same conviction or belief. *In re J.O.A.*, 283 S.W.3d at 345.

On review, an appellate court must not "substitute its own judgment for that of a reasonable factfinder." *In re Commitment of Stoddard*, 619 S.W.3d 665, 668 (Tex. 2020); *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The factfinder is the sole judge of the weight and credibility of the evidence. *In re J.O.A.*, 283 S.W.3d at 346. This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

### STATUTORY GROUNDS FOR TERMINATING M.L.'S PARENTAL RIGHTS

J.R. challenges the trial court's findings on both grounds, (O) and (P). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(O), (P). Under Subsection (O), the trial court may terminate parental rights to a child if the parent "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child" when that child has been in the care of the Department for not less than nine months. TEX. FAM. CODE § 161.001(b)(1)(O). Under Subsection (P), the trial court may terminate the parental rights to a child if the parent "used a controlled substance . . . in a manner that endangered the health or safety of the child" and either failed to complete a court-ordered drug treatment or continued to abuse a controlled substance after completing such treatment. TEX. FAM. CODE § 161.001(b)(1)(P).

A single statutory ground finding, when accompanied by a best interest of the child finding, is sufficient to support terminating a parent's rights under section 161.001. *In re A.V.*, 113 S.W.3d at 362; *In re R.S.-T.*, 522 S.W.3d 92, 111 (Tex. App.—San Antonio 2017, no pet.). When, as here, the trial court terminates the parent's rights on multiple predicate grounds, we may affirm on any one ground. *In re A.V.*, 113 S.W.3d at 362; *In re D.J.H.*, 381 S.W.3d 606, 611–12 (Tex. App.—

San Antonio 2012, no pet.). As a result, we will focus our analysis on the evidence of J.R.'s drug use in violation of Subsection (P).

**Relevant Facts**

J.D.R. was born at the end of May 2023. Based on a referral from the hospital where J.D.R. tested positive for methamphetamines at birth, both parents were tested, and both tested positive for methamphetamines. The mother admitted use of methamphetamines while J.R. denied it. He did admit using marijuana. The Department filed an affidavit for removal on June 13, 2023.

At the first adversary hearing, both parents were named temporary possessory conservators and were given the opportunity to have one-hour weekly visits with J.D.R. On July 26, 2023, J.R. signed the family service plan and was advised that the failure to complete the plan and provide a safe environment to J.D.R. within a reasonable period of time would result in his parental rights being restricted or terminated.

On April 17, 2024, the court held a final trial on the merits. The evidence established that J.R. completed the psychological and drug assessment required by the family service plan. He did not, however, take steps to follow through on any of the recommendations made as a result of that assessment, including inpatient drug therapy and counseling, even though he was required by court order to follow those recommendations. The caseworker testified that there was an ongoing concern about J.R.'s sobriety but he had not taken drug tests when required to do so. *See In re R.S.*, No. 01-20-00126-CV, 2020 WL 4289978, at *7 (Tex. App.—Houston [1st Dist.] July 28, 2020, no pet.) (mem. op.) ("The trial court could have reasonably inferred that the father was still using methamphetamine, or some other illegal drug, based on his failure to take court-ordered drug tests"); *In re E.R.W.*, 528 S.W.3d 251, 265 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (concluding factfinder could reasonably infer parent's failure to submit to court-ordered testing indicated parent avoided testing in an effort to conceal continued drug use).

The caseworker also testified that he told her he was living with various friends, sleeping on their couches. And he admitted to her that the friends he was staying with used drugs. The CPS investigator testified that J.R. acknowledged his own drug use but did not take his problem with methamphetamines seriously. Finally, the caseworker testified that at one of his recent visits with J.D.R., J.R. "was falling asleep while he was holding the baby." *In re A.L.S.*, 660 S.W.3d 257, 275–76 (Tex. App.—San Antonio 2022, pet. denied) (recognizing "drug use can destabilize the home and expose children to physical and emotional harm if not resolved."). The Texas Supreme Court recently recognized that "[a] parent's pattern of illegal use of a controlled substance like methamphetamine supports a finding of endangerment under (P) when the evidence shows it adversely affected the parent's ability to parent, presenting a substantial risk of harm to the child's health and safety." *In re R.R.A.*, 687 S.W.3d 269, 282 (Tex. 2024).

J.R. asserts in his brief to this court that he did not have enough time to deal with the issue of drug use. But no request for extension was made, and he did not appear for the final trial on the merits where he knew his parental rights could be terminated. Further, the evidence does not demonstrate that he took advantage of the time provided—over nine months—to address his drug issue.

**Conclusion**

Based on these facts, the trial court could have formed a firm belief or conviction that J.R. used a controlled substance in a manner that endangered the health or safety of the child and failed to complete a court-ordered substance abuse treatment program. *See* Tex. Fam. Code § 161.001(b)(1)(P). *In re R.R.A.*, 687 S.W.3d at 282. Accordingly, the evidence was legally and factually sufficient to support the trial court's finding under Subsection (P).

**BEST INTEREST OF THE CHILD**

J.R. asserts that the evidence was legally and factually insufficient to support the trial court's finding that terminating his parental rights was in J.D.R.'s best interest. *See* TEX. FAM. CODE § 161.001(b)(2). The Family Code statutory factors[i] and the *Holley* factors[ii] for best interest of the children are well known. Applying each standard of review and the applicable statutory and common law factors, we examine the evidence pertaining to the best interest of the child. We also consider the evidence we recited above as we now review the best interest of the child under section 161.001(b)(2). *See In re C.H.*, 89 S.W.3d at 28 (noting that the same evidence used to prove the parent's acts or omissions under section 161.001(b)(1) may be used in determining the best interest of the child under section 161.001(b)(2)); *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.); *see also* TEX. FAM. CODE ANN. § 263.307(a) ("In considering the factors established by this section, the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest."); *In re J.O.H.*, 617 S.W.3d 596, 599 (Tex. App.—San Antonio 2020, no pet.) (holding that, in considering a child's best interest, a parent's future conduct may be judged by their past conduct).

**J.D.R.'s Age and Vulnerabilities**

At the time of trial, J.D.R. was just under eleven months old. His physical and emotional needs—including for constant supervision—are significant. *See* TEX. FAM. CODE § 263.307(b)(1); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (factor B). He is placed with his great-grandmother who desires to adopt him, and he enjoys the love and care of numerous extended family members. *See* TEX. FAM. CODE § 263.307(b)(12), (13); *Holley*, 544 S.W.2d at 371–72 (Tex. 1976) (factors D, G). In addition, he has bonded with his two siblings, also in the same home.

Overall, J.D.R.'s young age and need for a safe and stable home weighs against J.R.'s best interest challenge.

### J.R.'s Drug Abuse

J.R. tested positive for methamphetamine drug use, admitted an ongoing issue with marijuana, and has failed to complete any treatment or counseling. Further, his failure to take random drug testing as required can be seen as some evidence of ongoing drug usage even as he was seeking to establish a relationship with J.D.R. *See Interest of G.D.P.*, No. 05-19-01068-CV, 2020 WL 401760, at *6 (Tex. App.—Dallas Jan. 24, 2020, pet. denied) (mem. op.) (citing *In re K.J.B.*, No. 14-19-00473-CV, 2019 WL 5704317, at *7 (Tex. App.—Houston [14th Dist.] Nov. 5, 2019, no pet.) (mem. op.) ("[A] fact finder reasonably can infer that a parent's failure to submit to court-ordered drug tests indicates the parent was avoiding testing because the parent was using illegal drugs.")); *see also In re L.G.R.*, 498 S.W.3d 195, 204 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (noting parents' drug use supports a finding that termination is in the best interests of the child).

### Indicia of Parent-Child Relationship

J.R. did make an effort to create a bond with his child. He participated in many (but not all) weekly visits and did well during the visits, feeding, playing, and putting the child to sleep. J.R. expressed the desire to participate in the plan leading to reunification even though he did not take many steps toward actually doing so. At his last visit with J.D.R., J.R. refused to provide his caseworker with his updated contact information. Then, he failed to appear for the final trial on the merits. *See* TEX. FAM. CODE § 263.307(b)(10), (11), (12); *Holley*, 544 S.W.2d at 371–72 (Tex. 1976) (factors B, D, H).

**Providing for J.D.R.'s Needs**

Throughout J.D.R.'s placement with the Department, J.R. did not have steady employment. He engaged in "odd end jobs." He also did not take steps to create a stable home for J.D.R., instead moving from friend to friend and sleeping on their couches. *See* TEX. FAM. CODE § 263.307(b)(11), (12); *Holley*, 544 S.W.2d at 371–72 (Tex. 1976) (factors B, D, G, H).

**J.R.'s Compliance with Family Service Plan**

The evidence further showed J.R. failed to complete most of the services on his family service plan. *See In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013) (in determining the best interest of the child in termination proceedings, the trial court may properly consider that the parent did not comply with the court-ordered family service plan for reunification with the child); *In re S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.) (considering the failure to comply with a family service plan as support for finding that termination is in child's best interest).

**J.D.R.'s Placement**

At the time of trial, J.D.R. was living with his great-grandmother (age 75), a maternal aunt, and two of his siblings. The plan was for the great-grandmother to adopt him along with the two siblings so they could be raised together. The caseworker testified that J.D.R. is happy with his family. He looks for his great-grandmother and smiles at her when she speaks, is bonded with his siblings, and enjoys the extended family support provided.

J.D.R.'s caseworker testified that J.D.R.'s placement was not only meeting his needs but was providing him a safe, loving environment surrounded by siblings and extended family members. *See* TEX. FAM. CODE § 263.307(b)(12), (13); *Holley*, 544 S.W.2d at 371–72 (Tex. 1976) (factors B, D, G). As the caseworker put it, J.D.R. is "surrounded by love and family and cousins and aunts and uncles and everyone."

**Ad Litem's Recommendation**

J.D.R.'s attorney ad litem aligned his recommendation to the court with the Department. He cited J.R.'s failure to comply and J.D.R.'s strong bond with his great-grandmother and family. *See* TEX. FAM. CODE § 263.307(b)(11), (12); *Holley*, 544 S.W.2d at 371–72 (Tex. 1976) (factors B, D, G, H).

**Analysis**

J.R. did not take the necessary steps to address his drug usage, to create a safe home for his child, or to maintain stable employment so that he may meet J.D.R.'s financial needs. "A parent's drug use, inability to provide a stable home, and failure to comply with a family service plan support a finding that termination is in the best interest of the child." *In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.). Having reviewed the evidence under the appropriate standards, we conclude the trial court could have reasonably formed a firm belief or conviction that it was in J.D.R.'s best interest for J.R.'s parental rights to be terminated. Therefore, the evidence was legally and factually sufficient to support the trial court's findings. *See* TEX. FAM. CODE § 161.001(b)(2).

**CONCLUSION**

For the reasons given above, we affirm the trial court's order.

Lori Massey Brissette, Justice

---

[i] Statutory Factors for Best Interest of the Child. The Texas legislature codified certain factors courts are to use in determining the best interest of a child:

    (1)     the child's age and physical and mental vulnerabilities;

    (2)     the frequency and nature of out-of-home placements;

    (3)     the magnitude, frequency, and circumstances of the harm to the child;

    (4)     whether the child has been the victim of repeated harm after the initial report and intervention by the department;

    (5)     whether the child is fearful of living in or returning to the child's home;

    (6)     the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;

    (7)     whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;

(8) whether there is a history of substance abuse by the child's family or others who have access to the child's home;

(9) whether the perpetrator of the harm to the child is identified;

(10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

(11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

(12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with:

    (A) minimally adequate health and nutritional care;

    (B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;

    (C) guidance and supervision consistent with the child's safety;

    (D) a safe physical home environment;

    (E) protection from repeated exposure to violence even though the violence may not be directed at the child; and

    (F) an understanding of the child's needs and capabilities; and

(13) whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE § 263.307(b); *see In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018) (recognizing statutory factors).

[ii] *Holley* Factors. The Supreme Court of Texas identified the following factors to determine the best interest of a child in its landmark case *Holley v. Adams*:

    (A) the desires of the child;

    (B) the emotional and physical needs of the child now and in the future;

    (C) the emotional and physical danger to the child now and in the future;

    (D) the parental abilities of the individuals seeking custody;

    (E) the programs available to assist these individuals to promote the best interest of the child;

    (F) the plans for the child by these individuals or by the agency seeking custody;

    (G) the stability of the home or proposed placement;

    (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

    (I) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (footnotes omitted); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors).